UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THEODORE KING and GARY LA BARBERA, as
Trustees and Fiduciaries of the Local 282 Welfare
Trust Fund, the Local 282 Pension Trust Fund,
the Local 282 Annuity Trust Fund, the Local 282 Job
Training Trust Fund, and the Local 282 Vacation
and Sick Leave Trust Fund,

                                Plaintiffs,                          **MEMORANDUM and ORDER**

        — against —                          02 CV 582 (SLT)(WDW)

AUDAX CONSTRUCTION CORP., FORMULA 1
TRANSPORT INC., FERRARA EQUIPMENT INC.
and SAL FERRARA,

                                Defendants.
----------------------------------------------------------------X
**TOWNES, United States District Judge[1]:**

       Plaintiffs, Gary LaBarbara and Theodore King, as trustees and fiduciaries (hereinafter

"Plaintiffs" or "Trustees") of the Local 282 Welfare, Pension, Annuity, Job Training and the

Vacation and Sick Leave Trust Funds (hereinafter "Funds"), bring suit pursuant to the Employee

Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. §1132, and the Labor

Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, against defendant, Audax

Construction Corps. ("Audax" or "Defendant"), a signatory to a collective bargaining agreement

("CBA") with Local 282 of the International Brotherhood of the Teamsters, for alleged unpaid

contributions to the Funds on behalf of third-party employees.  The Trustees also brought suit

against the third-party employers - defendants Ferrara Equipment, Inc. ("Ferrara") and Formula

1 Transport, Inc. ("Formula"), and Ferrara's owner, Sal Ferrara ("Sal Ferrara") – but each of

these defendants have since entered into a settlement agreement with the Plaintiffs.  Ferrara,

---

[1]The Court wishes to acknowledge the capable assistance of a student intern, Karen Meara of the
Benjamin N. Cardozo School of Law, in the preparation of this Memorandum and Order.

Formula, and Sal Ferrara (hereinafter "Cross-claimants") maintain a cross-claim against Audax for their obligations to the Funds on behalf of their employees who performed work for Audax. (Stipulation and Order of Settlement ¶ 11.) Audax seeks summary judgment pursuant to Fed. R. Civ. P. 56 dismissing both the Trustees' claims and the cross-claims by Ferrara and Formula. The Trustees seek summary judgment finding Audax liable for unpaid Fund contributions on behalf of Ferrara employees. Cross-claimants seek summary judgment in their cross-claims against Audax. For the reasons set forth below, Defendant's motion against Plaintiffs is denied and its motion against Cross-claimants is granted, Plaintiffs' motion is granted, and the Cross-claimants' motion is denied.

## BACKGROUND

Audax is engaged in the heavy equipment business. It supplies trucks and other heavy equipment, with drivers, to construction sites. Audax is required to pay benefits into the Funds on behalf of its drivers. This obligation arises from two sources. First, all of Audax's business during the period covered by this action was on behalf of the New York City Department of Design and Construction. New York City requires contractors to pay "prevailing wages and benefits," which, for heavy equipment drivers operating in New York City, pursuant to New York State Labor Law § 220, is equal to the rates set forth in the Local 282 CBA. (Pls.' 56.1 Statement, at ¶ 57.) Second, and more importantly, at all times relevant to this action, Audax has been a signatory to the Local 282 CBA, which directly requires, *inter alia*, Audax to make benefit payments on behalf of its employees into the Funds at rates prescribed in the CBA. (Def.'s Mem. Supp. Summ. J.; Def's 56.1 Statement.) The CBA obligates Audax and other

signatories to make such payments on behalf of their employees performing covered work[2] at all times, regardless of whether a contractee required such payments.  (Def.'s Motion for Summ. J, Ex. B, CBA (hereinafter, "CBA 2002-2006").)[3]

Although Audax generally meets its contractual obligations by supplying its own trucks or other equipment[4] operated by its own drivers, it also sometimes hires trucks from third parties, as needed, to fulfill its obligations.  These outside truck hires are sometimes "bare rentals" involving the rental of the truck or other equipment without a driver, in which case Audax supplies the driver, and pays benefits in accordance with the CBA.  On other occasions the rental included both the equipment and the drivers, in which case the drivers' wages and benefits are to be paid by the outside truck supplier.  The CBA places certain restrictions on Audax's capacity to hire outside trucks. In particular, it permits the hiring of outside trucks only if "all [of an Employer's] available suitable trucks or equipment are in use."  (CBA 2002-2006, Section 6(D).)  If all of Audax's trucks are in use, it is permitted to hire "only from truck or equipment suppliers whose drivers receive wages, working conditions, benefits and standards of employment no less favorable than those contained herein . . . ."  (CBA 2002-2006 Section

---

[2]"Covered work" has been interpreted by courts to include "any trucking and hauling jobs in the region covered by the CBA . . . ." *See e.g. Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc.*, № CV-92-2076 (JMA), 1993 WL 120081at *4 (E.D.N.Y. Mar. 30, 1993).

[3]During the period covered by the instant action, there were two consecutive CBAs between Audax and Local 282, one in effect from 1999-2002, and a second in effect from 2002-2006.  Although the language of each is quite similar and in many cases identical, there are minor differences.  The text of this decision cites to the 2002-2006 CBA.  If there are significant differences between the two agreements, the differing text of the 1999-2002 CBA will be footnoted accordingly.

[4]Although Audax does not own any trucks or equipment, the trucks and equipment Audax primarily uses – from Big "N" Equipment Rental, a company owned by Audax's owners – are, for purposes of the CBA, Audax's trucks, and will be so referred to here.  (*See* Pls. Rule 56.1 Statement ¶¶ 38-40; Def.'s Counterstatement ¶¶ 38-40.)  This distinction between the Audax's trucks and outside trucks hired by Audax is important because the CBA restricts the use of outside trucks.  (Audax's Motion for Summ. J., Ex. B, CBA Section 6(A).)

6(D).)[5]  When Audax hires outside trucks, it is required to notify Local 282 on a weekly basis; "The Employer and/or Contractor shall notify the Local 282 . . . on a weekly basis, of the identity and address of the truck or equipment supplier, the number of trucks supplied and the hours of work involved for each truck."*Id*.[6]

The CBA also places restrictions on subcontracting.  Pursuant to Section 7(A), employers who subcontract any covered work are required to "[s]ubmit monthly reports of all hours worked for each Employee, in all classifications covered by this Agreement, whether that work is performed by an Employee of the Employer or an Employee of a subcontractor . . . ." (CBA 2002-2006, Section 7(A).)  The CBA does not contain a definition of "subcontractor."

Sections 6 and 7 also include language regarding the consequences of non-compliance. Each section states, "[I]f the union, by an officer, by written notice with report of delivery, notifies the Employer and/or Contractor that a truck or equipment supplier is not complying, the [Employer and/or Contractor/Employer] [may/shall] be responsible for such non-compliance for the period only beginning two (2) working days after the day of receipt of such notice."  (CBA 2002-2006, Sections 6(D), 7(B).)[7]  In Section 6, "not complying" refers to the requirement that drivers of outside truck suppliers receive "wages, working conditions, benefits and standards of

---

[5]This section of the 1999 to 2002 CBA reads: "only from others whose drivers receive wages, working conditions, benefits and standards of employment at least as favorable as those contained herein." (Def.'s Exs. Supp. Summ. J, Ex. A, CBA, (hereinafter, "CBA 1999-2002") Section 6(D).)

[6]This section of the 1999 to 2002 CBA reads: "[t]he Employer shall notify the Local 282 . . . Funds, on a weekly basis, of the identity of the supplier, the number of trucks supplied and the hours of work involved for each truck." (CBA 1999-2002, Section 6(D).)

[7]In CBA 2002-2006, Section 6(D) uses the terms "Employer and/or Contractor" and "may" and Section 7(B) uses the terms "Employer" and "shall."  The CBA for 1999-2002 has language identical to the language in 7(B) in CBA 2002-2006.  (CBA 2002-2006; CBA 1999-2002.)

employment no less favorable than those contained herein." *(Id.* at Section 6(D).)[8]  In Section 7, "not complying" refers to any subcontractor who "fails to make contributions to the Local 282 . . . Funds . . . as required by this Agreement . . . ." *(Id.* at Section 7(B).)

Audax regularly hired outside trucks or equipment and drivers from Cross-claimants Ferrara and Formula on an "as needed basis."  (Def.'s 56.1 Statement ¶ 26; Ferrara 56.1 Statement, ¶ 41.)  Audax admits that it never informed Local 282 about these outside truck hires pursuant to the reporting requirements in Sections 6(D) or 7(A) of the CBA.  (Def.'s Mem. Supp. Summ. J. 3.)

At all times relevant to this action, Ferrara has been in the business of renting trucks as bare rentals or with drivers to contractors.  (Ferrara 56.1 Statement ¶ 11.)  Sal Ferrara is the owner and controlling officer of Ferrara.  (*Id.* ¶ 12.)  Ferrara has never been a signatory to a Local 282 CBA.  (*Id.* ¶ 15.)  Sal Ferrara states that he considered having Ferrara become a signatory of the CBA, but did not, because most of the work he did was non-union, and the only union contractor he conducted business with – Audax – allegedly discouraged him from becoming a signatory.  (Sal Ferrara Dep., 10:23-11:17, Nov. 26, 2003.)  Instead, he encouraged his father-in-law, Charles Hirschorn, a retired court reporter with no experience in the construction industry, to start another truck rental business that could be a signatory to the CBA and that could utilize Ferrara's equipment and drivers when they did not have enough non-union work.  (*Id.* 10:2-13:16; Sal Ferrara Dep. 22:7-24:21, Jan 14, 2005.)  Hirschorn incorporated Formula 1 in or about January of 2000 and entered into the collective bargaining agreement with Local 282, effective January 13, 2000 to June 30, 2002.  (Ferrara, 56.1 Statement ¶¶ 15, 17.)

---

[8]In the CBA for 1999 to 2002, this language reads: "wages, working conditions, benefits and standards of employment at least as favorable as those contained herein."  (CBA 1999-2002, Section 6(D).)

Formula and Ferrara were almost identical in their business operations: both companies had the same corporate purpose (to lease trucks and equipment), were managed by the same principal (Sal Ferrara), used the same trucks and equipment, employed the same individuals, and operated out of the same location – an office at the home of Sal Ferrara. (Sal Ferrara Dep., 13:2-18, 33:2-18, 34:20-40:7, 41:14-42:6, Nov. 26, 2003.) Sal Ferrara made all decisions regarding which trucks and drivers would be used on both Ferrara and Formula jobs. Hirschhorn had almost no involvement in running the business other than signing checks prepared by Sal Ferrara. (Hirschhorn Dep. 19:17-21:25, Nov. 26, 2003.)

During the period that Formula was a CBA signatory, Audax paid two different truck rental rates to Sal Ferrara, depending on whether he was leasing Formula or Ferrara trucks and drivers to Audax. (Def.'s Counter-statement to Pls.56.1 statement at ¶ 55.) According to Sal Ferrara, he received between 520 to 540 dollars per day for a truck and driver from Ferrara, and 750 to 780 dollars per day for a truck and driver from Formula. (Sal Ferrara Dep., 18:11-14, Nov. 26, 2003.) Plaintiffs allege, and Sal Ferrara corroborates, that Sal Ferrara paid two rates to his drivers who performed work for Audax, depending on whether a union shop steward was present at the job site. (Id., at 13:7-24, 39:2-9; Pls Mem. Supp. Summ. J. at 3; Sal Ferrara Dep. 117:6-14, Jan. 14, 2005; Def's 56.1 Statement, ¶ 23). For so-called non-union jobs, Sal Ferrara's drivers did work as Ferrara employees and were not paid prevailing wages and benefits, but when these same drivers, who were members of Local 282, worked on so-called union jobs, they worked as Formula employees, were paid union wages, and benefit payments were remitted to the Funds for those employees as required. (Sal Ferrara Dep. 13:7-24, Nov. 26, 2003; Pls. 56.1 Statement ¶ 36.) Plaintiffs further allege, and Sal Ferrara corroborates, that Audax was fully aware of and supportive of these dual wage and benefit systems, which enabled

Audax to sometimes pay lower truck hire rates, in direct violation of CBA Section 6(D). (Pls. 56.1 Statement at ¶¶ 42, 47, 52, 53; Sal Ferrara Dep. 11:11-21, 18:2-17, Nov. 26, 2003; Sal Ferrara Dep. 117:6-23, Jan. 14, 2005.) Audax denies having made any distinction between "union" or "non-union" jobs in its dealings with Ferrara and Formula, and denies any knowledge of a dual system of wages and benefits for those Formula and Ferrara drivers doing Audax work, but admits that it paid two different rental rates to Sal Ferrara for trucks with drivers, depending on whether they were hired through Ferrara or Formula. (Def.'s Counter-statement to Pls.' 56.1 Statement at ¶ 34, 55.) The CBA specifically requires employers to agree not to "establish or participate in a double breasted[9] operation within the geographical jurisdiction of Local 282." (CBA 2002-2006, Section 34.)

Audax asserts that it complied with Section 6(D) by informing all companies from whom it rented trucks, including Ferrara and Formula, that all Audax jobs were at the prevailing wage and that all outside truck hire employees were required to receive prevailing wages and benefits. (Nicholas Nubile Dep. 22:24-25, 24:5-6, Jan. 31, 2005.) Sal Ferrara claims that

---

[9] The term "double breasted" is not defined in the CBA, but seems to be synonymous with the "alter ego" and "single employer" doctrines. Under the single employer doctrine, two entities constitute a single employer if some or all of the following factors are present: "'interrelation of operations, common management, centralized control of labor relations and common ownership.' [internal citation omitted] Also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises." *Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir, 1996) (citing *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256 85 S. Ct. 876, 877, 13 L. Ed.2d 789 (1965); *Three Sisters Sportswear Co.,* 312 N.L.R.B. 853, 1993 WL 398465, at *15 (N.L.R.B. Sept, 30, 1993)). Single employers may be held liable for debts and other obligations of one another, and in some cases may be bound to the collective bargaining agreement of the other entity.

The alter ego doctrine is similar to the single employer doctrine, but has the added factor of intentional evasion of collective bargaining obligations through the maintenance of two essentially identical entities, one union and one non-union. *Id.* at 748 (citing *Carpenters Local Union Nº 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 508 (5th Cir. 1982)). Where a non-union employer is found to be the alter ego of a union employer, the former is bound by the collective bargaining agreements made by the other. *Id* (citing *Howard Johnson Co. v. Detroit Local Joint Executive Bd.*, 417 U.S. 249, 259 n.5, 94 S. Ct. 2236, 2242 n.5, 41 L. Ed.2d 46 (1974)).

Audax never informed him that Ferrara was required to pay prevailing wages and benefits on Audax jobs for the City of New York. (Sal Ferrara Dep. 14:2-15:12, Jan. 14, 2005.)

On June 30, 2002, the CBA between Formula and Local 282 expired, and Formula ceased operations. (Ferrara 56.1 Statement ¶ 35-36.) Thereafter, Audax continued to contact Sal Ferrara to fulfill its outside truck needs. During this period, Audax sometimes rented Ferrara trucks without a driver and then hired the Ferrara drivers directly, placing them on Audax's payroll, to drive Ferrara's trucks. (Pls. 56.1 Statement ¶ 65.) Under this arrangement, Audax paid Ferrara only the bare rental rate, and paid union wages directly to the Ferrara employees and paid benefits on their behalf into the Funds. (*Id.* at ¶ 65, 67-68; Def.'s Counter-statement to Pls. 56.1 Statement ¶ 65.) Other times, Audax hired trucks with a driver from Ferrara, and the drivers were paid from Ferrara's payroll. (Pls. 56.1 Statement ¶ 66.) Under this arrangement, Audax continued to pay Ferrara lower per day rates than it had paid to Formula; $520-$540 per day, compared with approximately $750-$780 per day that it had paid for the same trucks and drivers through CBA signatory Formula. (Sal Ferrara Dep., 18:11-14, Nov. 26, 2003; Def's 56.1 Statement ¶ 32.)

Plaintiffs allege that Audax is jointly and severally liable with Ferrara for unpaid benefit contributions to the Funds on behalf of Ferrara employees under one of two theories: (1) Audax directly violated Section 6(D) and/or Section 7 of its CBA by hiring Ferrara trucks even though Ferrara did not pay prevailing wages and benefits to its employees, or (2) Audax acted in concert with Ferrara and Formula's single employer or alter ego arrangement prior to June 30, 2002, and with Ferrara alone after that date, to avoid Fund contributions and, therefore, under a joint employer theory, is jointly and severally liable for Ferrara's contribution shortfalls on behalf of union employees who performed Audax work. Plaintiffs seek summary judgment

finding Audax liable for payment to the Funds under one of these two theories. Defendant

Audax seeks summary judgment on grounds that (1) LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5)

prohibits Audax from making payments to the Funds on behalf of Ferrara's employees;

(2) Section 6(D) of the CBA does not require Audax to make payments to the Funds for drivers

of outside truck suppliers; (3) Audax did not violate Section 6(D) of the collective bargaining

agreement since it informed truck hires of their obligation to pay prevailing wages; and (4) there

was no joint employer relationship between Audax and Ferrara. Cross-claimants assert that

Audax is jointly and severally liable for their obligations to the Funds on behalf of Ferrara

employees due to Audax's violation of its CBA, and they seek relief from Audax accordingly.

They also have moved for summary judgment, seeking indemnification of their obligations to

Plaintiff via the settlement agreement.

## DISCUSSION

### A.      *Standard for Summary Judgment*

Summary judgment is generally appropriate where the "pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." *Viola v. Philips Med. Sys. Of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting

Fed. R. Civ. P. 56(c)). The relevant governing law in each case determines which facts are

material; "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable

factual issue exists when the moving party demonstrates, on the basis of the pleadings and

submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the

nonmovant, that no rational jury could find in the nonmovant's favor. *See Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the nonmovant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine*, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). The nonmovant cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

**B.      *Audax's Motion for Summary Judgment***

**1.      *Legality of Benefit Payments under LMRA 302(c)(5)***

In actions by trustees of employee benefit plans for unpaid benefits pursuant to ERISA § 515, 29 U.S.C § 1145, the Second Circuit Court of Appeals limits an employer's permissible defenses to two circumstances:  (1) when the contributions themselves would be illegal, or (2) when the collective bargaining agreement is void. *Benson v. Brower's Moving & Storage, Inc*., 907 F.2d 310, 314 (2d Cir. 1990). Audax relies on the first defense, arguing that any payments made by Audax to the Funds on behalf of Ferrara's employees would violate federal law. Specifically, LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5), prohibits payments to union representatives, including trustees of employee trust funds, in all but a narrow range of circumstances, and Audax argues that payments to the Funds on behalf of Ferrara's employees would fall outside the permitted exceptions. The relevant statutory exceptions to the prohibition are as follows:

(c) Exceptions

The provisions of this section shall not be applicable . . .

10

. . .

> (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . . .

29 U.S.C. §186(c)(5)(A-B) (parenthetical in original).

Relying on *Trustees of the Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield County Sprinkler Co.*, 243 F.3d 112 (2d Cir. 2001), and *Walsh v Schlecht*, 429 U.S. 401, 97 S. Ct. 679, 50 L. Ed. 2d 641 (1977), Audax interprets § 186(c)(5) to prohibit Audax from making payments to the Funds "'on behalf of'" employees other than its own unless "the amounts of such contributions are capable of being measured by the number of hours worked by that employer's workers. . . ." (Def.'s Mem. Supp. Summ. J. 7, 8.) Audax argues that it may not legally make payments on behalf of Ferrara employees either because Ferrara was not a union signatory or because there is no detailed basis upon which contributions owed can be determined. These arguments fail to persuade the Court.

The cases relied on by Defendant do not lend clear support for its contention that Audax may not make payments on behalf of Ferrara employees. *Fairfield County Sprinkler*, an unsuccessful underpayment action brought by trustees to a benefit fund, is distinguishable from the instant case. *Fairfield* involved hours worked by employees who were not union members

during the period in question. 243 F.3d at 115. Here, Ferrara's employees were union members by virtue of their work for Formula prior to June 30, 2002, and by virtue of their work driving Ferrara vehicles on Audax's payroll after Formula ceased to exist. In *Fairfield*, by contrast, the alleged failure to make payments into the trust funds was committed by an employer who was no longer a signatory to the union contract, did not employ workers who were union members, and did not accept work on behalf of other signatories to the union agreement. *Id*. Where a signatory's outside truck hires employed union drivers, courts have not hesitated to order the signatory to make Fund contributions on behalf of those outside drivers. *See, e.g., Brown v. C. Volante Corp.*, 194 F.3d 351 (2d Cir. 1999) (affirming an E.D.N.Y. decision granting summary judgment to Plaintiffs in an action for unpaid Fund contributions on behalf of drivers of outside truck hires). However, even if Ferrara's employees were not union members, the Court in *Walsh v. Schlect* makes clear that signatory employers like Audax may be required to contribute to benefit funds on behalf of its own employees where it has violated the terms of its collective bargaining agreement by diverting work to employers who do not pay prevailing wages and benefits. 429 U.S. at 410-411. In *Walsh* the amounts of such payments were measured by the hours of diverted, underpaid work. *Id*. at 410. These two cases emphasize that the key to compliance with § 186(c)(5)(A) is that payments be made on behalf of or for the benefit of those who are eligible to receive benefits – *i.e*., union members. In sum, if Audax is liable for unpaid contributions, 29 U.S.C § 186(c)(5)(A) poses no bar to this court's requiring Audax to make payments to the Funds on behalf of Ferrara employees, or, in the alternative, Audax employees.

Audax also argues that the benefit contributions sought fail to fall within the exceptions of 29 U.S.C. § 186(c)(5) because there is no detailed written basis on which payments may be

made. Audax asserts that the absence of language in the CBA "requir[ing] an employer who hires trucks from an independent contractor to make payments to the . . . Funds based upon hours worked" (Def.'s Mem. at 8), combined with the fact that Audax paid a daily per truck rate rather than a rate broken down by hours driven, makes it impossible for Plaintiffs to establish that the allegedly owed benefit contributions are capable of measurement in accordance with 29 U.S.C. § 186(c)(5)(B). While the CBA could be more clearly drafted regarding a signatory employer's obligations for non-payment of Local 282 benefits or their equivalent under Sections 6 and 7, it is inaccurate to say that it is devoid of language that meets the requirements of §186(c)(5)(B). First, Sections 6 and 7 both include language that puts Employers on notice that they may be held responsible for non-compliance with benefit requirements, and Section 7 specifically states that subcontractors are required to make benefit payments to the Funds. (CBA 2002-2006, Sections 6(D), 7(A-B).) Second, the CBA, which governs not only Audax, but all signatory employers and employees working within the Local 282 geographic region, clearly delineates the amounts per hour that must be contributed to the Funds either "for each hour worked" or "for each hour paid." (CBA 2002-2006, Section 13.)

In the second half of its argument regarding the requirements of 29 U.S.C. § 186(c)(5)(B), Audax argues that, regardless of whether there is a written agreement upon which contributions can be measured, no testimony or other evidence has been submitted by Plaintiffs or Cross-claimants providing data on hours worked by Ferrara drivers or amounts paid to them. "[T]he only basis that the Plaintiff has submitted to allege liability against Audax is the daily rate paid by Audax to Ferrara for a truck and driver." Audax concludes that in the absence of an hourly rate agreement between Audax and Ferrara, there is no basis on which to

hold Audax liable consistent with 29 U.S.C. § 186(c)(5)(B), and, therefore, the action should be dismissed.

Audax's arguments on this point are disingenuous. First, Audax was required under its CBA to make weekly reports to Local 282 regarding the hiring of outside trucks, including "the identity of the supplier, the number of trucks supplied and the hours of work involved for each truck." (CBA 2002-2006 Section 6(D).) Audax admits that it never made such reports. (Def.'s Mem. Supp. Summ. J. 3.) Second, if Audax's outside hires were "subcontractors," as urged by Plaintiffs, Audax was required to submit monthly reports of all hours worked by the subcontractor's employees pursuant to Section 7 of the CBA. Audax never submitted any Section 7 reports. *Id.* Finally, Audax was required to submit to periodic audits of payroll records and truck rental agreements as a condition of the CBA and allegedly has failed to comply with requests for audit since March 31, 2002. (CBA 2002-2006, Section 16; Compl. ¶¶ 49-51.) In other words, Audax asks this court to relieve it from liability on grounds that it does not have the information required to calculate its liability, yet this lack of information stems largely from Audax's own failure to fulfill its obligations under the CBA to track and supply such information. Defendant's motion for summary judgment on this ground is, therefore, denied. Section 302(c)(5) of the Labor Management Relations Act was passed by Congress to prevent bribery of union representatives by employers, and misuse of employee benefit funds by union trustees, *Arroyo v. United States*, 359 U.S. 419, 425-26, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959), not to enable employers to shield themselves from liability simply by refraining from tracking information necessary to hold them liable for violations of bargaining agreements.

## 2.     *Direct violation of the collective bargaining agreement*

Audax next argues that its motion should be granted because it never knowingly violated Section 6(D) of its CBA when it hired trucks from Sal Ferrara.  Audax correctly points out that 6(D) does not restrict employers to hiring outside trucks only from CBA signatories.  However, it incorrectly assumes that the CBA places almost no obligation on the employer to ensure compliance with the 6(D) requirement that outside truck hires must employ workers who "receive wages, working conditions, benefits and standards of employment no less favorable than those contained herein . . . ."  (CBA 2002-2006, Sections 6(D).)  Audax argues that "Ferrara represented to Audax that it was paying prevailing wages and benefits to its men" (Def.'s Reply Mem. Supp. 3.), and seems to conclude that its obligations to ensure compliance ended there.  Although there is abundant conflicting evidence suggesting that Audax was aware that Sal Ferrara did not pay his employees sufficient wages and benefits to comply with 6(D) (*see, e.g.,* Sal Ferrara Dep. 11:11-18, Nov. 26, 2003), the critical question is not so much what Audax knew, but rather what Audax's obligations were under 6(D).  Section 6(D) requires: (1) that employers refrain from hiring outside trucks unless certain conditions are met, including that drivers of such trucks receive prevailing wages and benefits; (2) that employers notify the Funds weekly regarding any such hires; (3) that the union notify the employer if the truck supplier is not complying with wage and benefit requirements; and (4) that the employer assume responsibility for non-compliance within two days of written notice from the union.  (CBA 2002-2006, Section 6(D).)  The first requirement – that Employers use only outside truck suppliers that pay prevailing wages and benefits – is an absolute requirement.  The CBA does not condition this requirement on awareness or knowledge; it requires the employer to comply unconditionally, and to risk being held liable where such compliance is not met.  In *Brown v*

*Volante*, the employer's claims that "we were under the assumption that [the outside truck suppliers] were paying their own union benefits" did not relieve the employer of liability. 194 F.3d at 353.

Furthermore, although the CBA implicitly places the onus of ensuring compliance on the union (by requiring the union to give an employer written notice regarding an outside truck supplier's non-compliance with wage and benefit requirements), this obligation is preceded by an employer's obligation to report to the union that it is engaging outside trucks. Audax never informed Local 282 that it was using Ferrara or Formula trucks. (Def. Mem. Supp. Summ. J. 3.) In *Brown*, where the Employer failed to inform Local 282 that it was using outside trucks, the Second Circuit concluded that notification by the Employer is a condition precedent to the union's obligations under 6(D). 194 F.3d at 357. In other words, the Employer could not escape liability by invoking the protection of the provision requiring the union to send written notice regarding non-compliance when the employer had first breached its own duty to notify the union. The CBA afforded Audax ample protection from unwittingly being held liable for Ferrara's failure to pay prevailing wages and benefits; all Audax had to do was notify Local 282 that it was hiring Ferrara, and the burden would have shifted to the union to ensure compliance with wage and benefit requirements. Instead, Audax chose to keep the union in the dark regarding its outside truck hires. Audax's request for summary judgment on the grounds that it never knowingly violated Section 6(D)'s wage and benefit requirements is, therefore, denied.

### 3. *Audax's liability under a joint employer theory*

Finally, Audax urges the court to grant summary judgment in its favor because Plaintiffs have failed to demonstrate that Audax is a joint employer with Ferrara. The Court

declines to reach that question, as the answer would not alter the Court's denial of the motion. Even if Audax prevails on this limited question, granting summary judgment would be inappropriate, since Audax has failed to show that no reasonable jury could find it liable on the alternate grounds that it directly violated its CBA with Local 282. Defendant's motion for summary judgment against Plaintiffs is denied.

## C.      *Plaintiff's Motion for Summary Judgment*

Plaintiffs seek summary judgment finding Audax liable for underpayments to the Funds on behalf of Ferrara's employees. Plaintiffs' first theory of liability is that Audax directly violated Section 6(D)[10] of its CBA by hiring an outside truck supplier who did not pay its employees wages and benefits commensurate with the CBA's requirements. Audax does not dispute that it hired Ferrara to perform covered work or that it failed to notify Local 282 that it had done so. (Def.'s 56.1 Statement ¶ 26; Def.'s Mem. Supp. Summ. J. 3.) Sal Ferrara testified that he never made benefit payments on behalf of his Ferrara employees who performed Audax work. (Sal Ferarra Dep. 13:19-21, Nov. 26, 2003.) Audax produced no evidence to contradict this statement. Its denials (*See* Def.'s Counter-statement Pls. 56.1 Statement ¶ 54), and claims that it did not knowingly violate Section 6(D), are not sufficient to defeat liability. To create a genuine factual dispute sufficient to defeat a motion for summary judgment, the nonmoving party must do more than rely on denials or "conclusory statements." *L & L Started Pullets, Inc. v. Gourdine* 762 F.2d 1, 3-4 (2d Cir. 1985). Furthermore, as has been discussed, the CBA does not condition liability on knowledge. The mere undisputed fact that Audax hired outside trucks and drivers from Ferrara, a supplier who, by its owner's own

_____

[10] Plaintiffs also assert that Defendant violated Section 7 of the CBA, but as the motion may be disposed of on the alleged violation of 6(D), the court declines to reach that issue.

admission, did not pay wages and benefits on behalf of its employees commensurate with those required by the CBA, establishes Audax's liability.

Audax argues in its defense that the daily rate it paid to Ferrara was sufficient to comply with wage and benefit requirements and, therefore, any shortfall in payments on behalf of Ferrara employees should be Ferrara's responsibility. This argument fails on both the facts and the law. Audax admitted that it paid two substantially different rates to Formula and Ferrara, paying approximately $200 more, per day, to Local 282 signatory Formula than to non-signatory Ferrara for the same trucks and drivers. It is difficult to imagine any logical explanation for this dual rate other than that Audax intended to save money by hiring non-union trucks when possible. However, the disposition of this point need not rest on this factual inference; as was discussed earlier, in actions by trustees of employee benefit plans for unpaid benefits pursuant to ERISA § 515, 29 U.S.C. § 1145, an employer's permissible defenses are limited – an employer may avoid liability only when the contributions themselves would be illegal or when the collective bargaining agreement is void. *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990). This argument, therefore, does not relieve Audax of liability.

The other defenses raised by Audax – specifically that LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5) prohibits Audax from making contributions to the Funds on behalf of Ferrara employees, and that the union failed to notify Audax of its liability for non-compliance – were disposed of earlier, and Audax's submissions raise no issues that require the court to revisit those analyses.

Summary judgment is, therefore, granted to Plaintiffs on the question of Audax's direct liability to the Funds for unpaid benefit contributions on behalf of Ferrara employees. As

liability is established on Audax's direct violation of its CBA, the court need not reach the question of liability under a joint employer theory.

**D.** ***Cross-motions for summary judgment on cross-claims by Ferrara, Formula, and Sal Ferrara against Audax***

Ferrara, Formula, and Sal Ferrara maintain cross-claims seeking reimbursement from Audax for amounts owed by them pursuant to their settlement agreement with Plaintiffs. They argue that because Audax violated its collective bargaining agreement with Plaintiffs, Audax alone should be liable for the non-compliance of its outside truck hires with wage and benefit requirements contained in Section 6(D) and 7(B) of the CBA. Cross-claimants specifically claim that Audax should be liable for the "contributions, interest, additional interest or liquidated damages, audit fees, attorney's fees and costs which the Funds allege are due and owing from Formula 1, Ferrara Equipment, and Sal Ferrara . . . ." (Ferrara and Sal Ferrara, Answer and Cross-Claims, ¶¶ 75, 80.) In addition, Cross-claimants argue that Audax is similarly liable "as a result of Audax's refusal to pay Ferrara Equipment the going daily truck rental rate paid to corporations with collective bargaining agreements with Local 282 . . . ." (Id. ¶ 85.)

**1.** ***Standing under ERISA***

Cross-claimants fail to clearly state the causes of action upon which they base their cross-claims. One possibility is that they seek recovery on the basis of Audax's violations of ERISA § 515, 29 U.S.C. § 1145, which requires employers like Audax to make benefit contributions in compliance with their collective bargaining agreements. In response, Audax argues that Cross-claimants have no standing to bring a civil suit under ERISA, and this Court agrees. "ERISA carefully enumerates the parties entitled to seek relief under [ERISA § 502(a),

29 U.S.C. 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action. . . ." *Connecticut v. Physicians Health Serv. of Conn. Inc.*, 287 F. 3d 110, 121 (2d Cir. 2002) (citing *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Ferrara and Formula are not participants, beneficiaries or fiduciaries, but rather, are employers. The Second Circuit Court of Appeals has repeatedly interpreted 29 U.S.C. § 1132(a) to prohibit employers from bringing ERISA claims. *See, e.g., Tuvia Convalescent Ctr., Inc. V. Nat'l Union of Hosp. and Health Care Employees*, 717 F.2d 726 (2d Cir., 1983).

In its Memorandum of Opposition to Audax's Motion for Summary Judgment, Formula 1 argues that Sal Ferrara, by virtue of being a member of Local 282, has standing to sue. While it is true that Sal Ferrara has standing pursuant to 29 U.S.C. § 1132(a), such standing affords him the right to sue to recover benefits due to him personally, not benefits due to others. *Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986).

### 2.    *Cross-claimants' right to indemnification*

Cross-claimants' arguments also seem to imply that they seek recovery under the common law claim for indemnification. Under such a claim, a party who has been held vicariously liable but is without fault may seek indemnification from the party who created the liability. *Sabater v. Lead Industries Ass'n, Inc.* 2001 WL 1111505, *5 (S.D.N.Y. Sept. 21, 2001) (citing *Trustees of Columbia University v. Mitchell/Giurgola Assocs.*, 492 N.Y.S.2d 371, 375 (N.Y.Sup. Ct. 1985)). For example, an employer who has been held vicariously liable for the torts of a negligent employee may seek indemnification from the employee. *Sabater,* 2001 WL 1111505 at *5. The right to such indemnification may be expressly created in a contract or implied by a court where there is a special relationship between the parties, such as

employer/negligent employee, or motor vehicle owner/negligent driver. *Id.* (citing *In re Del-Val Fin. Corp. Sec. Litig.*, 868 F.Supp. 547, 553 (S.D.N.Y. 1994)). Here, there was no contract agreement between Audax and Cross-claimants that Audax would indemnify them for fiduciary obligations to Local 282. Further, even if the court were to find an implied special relationship between the parties, the facts demonstrate that Cross-claimants were fully aware of and participants in Audax's violations of its CBA, and, therefore, an indemnification claim must fail: "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Trustees of Columbia Univ.*, 492 N.Y.S.2d at 375.

### 3. *Cross-claimants' failure to state a claim*

Audax also argues, and this Court agrees, that Cross-claimants have failed to state a claim. Cross-claimants failed to produce even one case that supports its contention that an employer like Audax who has violated its CBA by hiring third parties who fail to pay required benefits may be held liable not only by the benefit Funds, but also by the third party. The sole case Cross-claimants rely upon in their memoranda in support of their motions – *Mason Tenders v. Abatement International*, 82 F.Supp.2d 175 (S.D.N.Y., 2000) – does not support their argument. In *Abatement International*, a general contractor who was a union signatory was sued by trustees of benefit funds for unpaid contributions owed by the subcontractor under a separate agreement with the same union. 82 F.Supp. 2d at 176-77. The trustees had successfully secured a judgment against the subcontractor, but had been unable to collect. *Id.* at 177. Pursuant to a provision in the collective bargaining agreement with the general contractor, the trustees were entitled to hold the general contractor liable for non-compliance by the subcontractor. Here, Cross-claimants are in the position of the subcontractor. If Plaintiffs are unable to collect any contributions owed by the Cross-claimants, they are entitled,

pursuant to CBA provisions 6(D) and/or 7(B), to seek such contributions from Audax. However, *Abatement International* speaks only to monies collectible by the trustees, not by the subcontractor. There is nothing in the case to suggest that, had the Mason Tender trustees been successful in collecting the judgment from the subcontractor, the latter would then have been entitled to turn around and collect that obligation from the general contractor. *Abatement International* does not support Cross-claimants' arguments that they should be able to shift their own obligations to Audax under indemnification or any other theory.

In its opposition memo to Audax's motion for summary judgment, Cross- claimants cite additional cases in support of the proposition that general contractors may be held liable for benefit contributions owed by subcontractors. See e.g. *Laborer's Pension Fund v. Concrete Structures of the Midwest, Inc.*, 999 F.2d 1209 (7th Cir. 1993); *Chicago Painters and Decorators Pension, Health and Welfare Trust Fund v. Karr Brothers*, 755 F.2d 1285 (7th Cir. 1985). These cases, which, like *Abatement International*, involve successful claims by trustees, lend no support to their argument. Cross-claimants' emphasis is misplaced; the Court agrees that Audax may be held liable for benefit payments on behalf of Ferrara's employees who performed work for Audax. However, it is quite a leap to then conclude that these cases require the court to hold Audax liable not only to the Trustees, but also to the Cross-claimants. The cases cited draw no such conclusions, and this Court declines to do so as well.

As Cross-claimants have failed to state any basis on which they are entitled to relief, Audax's motion for Summary Judgment as to the cross-claims is granted, and Cross-claimant's motion is denied.

### E.    *Plaintiffs' Motion to Amend*

Finally, Plaintiffs move to amend their complaint to add Nicholas Nubile, Nunzio Montoni, and Victor DiRe in their individual capacities for defrauding the Funds as controlling corporate officers of Audax,[11] and seek to hold them jointly and severally liable with the other defendants for all amounts owed to the Funds for hours worked by employees of Ferrara Equipment and Formula 1. Plaintiffs filed their motion to amend simultaneously with their motion for summary judgment and Audax's cross-motion for summary judgment.

Rule 15(a) of the Federal Rules of Civil Procedure generally governs the amendment of complaints and instructs courts that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). Where, as here, a party seeks to amend a complaint to add additional defendants, Rule 21 of the Federal Rules of Civil Procedure governs. *See Klecher v. Metropolitan Life Ins. Co.*, 331 F. Supp. 2d 279, 283 (S.D.N.Y. 2004). Rule 21 states that a party may be added to an action "at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. In deciding whether to allow joinder, the Court is guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Soler v. G & U, Inc.,* 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980) (quoting *Fair Hous. Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).

Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), the decision of whether or not to grant a plaintiff's motion to file an amended pleading remains within the court's discretion. *See Foman*, 371 U.S. at 182. "The district court has

---

[11] Formula 1 and Ferrara also move to amend their cross-claims and add claims against Nicholas Nubile, Nunzio Montoni, and Victor DiRe in their individual capacities. However, because Formula/Ferrara's motion for summary judgment against Audax is denied, the Court declines to reach the issue.

discretion whether or not to grant leave to amend, and its discretion is not subject to review on appeal except for abuse of discretion." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citing 3 Moore's Federal Practice ¶ 15.08 at 15-64 (2d ed. 1992).  Reasons to deny a motion for leave to amend include undue delay, bad faith, prejudice to the opposing party or the futility of the amendment.  *See Foman*, 371 U.S. at 182.

Defendants argue that the amendment should not be allowed because Defendants will be severely prejudiced as a result of Plaintiffs' substantial delay in filing their motion.  In determining whether a party's interests have been unduly prejudiced, the Second Circuit has instructed district courts to consider "whether the assertion of the new claim would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute."  *Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.,* Nº 96-1829, 2001 WL 1286989, at *3 (S.D.N.Y. Oct. 24, 2001) (quoting *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993)).

Plaintiffs' proposed amendment in this case would both require Audax to expend significant additional resources and also significantly delay the resolution of the dispute.  These factors weigh against granting Plaintiffs' requested relief.  *See Sullivan v. County of Suffolk*, Nº 04-3651, 2006 WL 2844205, *6-7 (E.D.N.Y. June 1, 2006).  Furthermore, "the Second Circuit looks disfavorably upon Rule 15 motions made after all discovery has been completed and a summary judgment motion has been submitted."  *Walton v. Waldron*, 886 F. Supp. 981, 984 (N.D.N.Y. 1995) (citing *Ansam Assocs., Inc. v. Cola Petroleum*, *Ltd*., 760 F.2d 442, 446 (2d Cir. 1985)).  *See also Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc*., 404 F.3d 566, 581 (2d Cir. 2005) ("[T]he liberal provisions for amendment under the Federal Rules are

restricted following the filing of a motion for summary judgment and the completion of discovery . . . .").

The Court finds that there will be undue prejudice to Defendant if an amendment is allowed. "[T]he trial court [is] required to take into account any prejudice that might result to the party opposing the amendment." *Ansam Assocs., Inc*., 760 F.2d at 446 (internal quotation omitted) (affirming the district court's denial of the plaintiff's motion to amend and finding that to grant it would be "especially prejudicial" to the defendant in light of the fact that discovery had closed and the defendant had filed for summary judgment). Therefore, Plaintiffs' request to amend their complaint is denied.

## CONCLUSION

Audax's motion for summary judgment is DENIED as to Plaintiffs, and GRANTED as to Cross-claimants. Plaintiffs' motion for summary judgment is GRANTED on the issue of Audax's liability. Plaintiff's motion to amend the Complaint is DENIED. The motion for summary judgment of Ferrara, Formula, and Sal Ferrara on their cross-claims is DENIED.

Outstanding questions as to the specifics of Audax's contribution obligations remain. Audax is ordered to submit to audit, and to produce within thirty (30) days any documentation that is required pursuant to the audit requirements in its CBA. Upon completion of the audit, the parties are directed to submit to the requirements of Magistrate Judge William D. Wall for a

determination of all damages, interest, and attorneys' fees to which the Trustees are entitled

under ERISA.

       SO ORDERED.

Dated: Brooklyn, New York
      September 5, 2007

                                *Sandra L. Townes*
                                SANDRA L. TOWNES
                                United States District Judge