UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
GARY LA BARBERA and THEODORE KING, as
Trustees and Fiduciaries of the Local 282 Welfare
Trust Fund, the Local 282 Pension Trust Fund, the
Local 282 Annuity Trust Fund, the Local 282
Vacation and Sick Leave Trust Fund, and the Local
282 Job Training Trust Fund,

                              Plaintiffs,

      - against -

AUDAX CONSTRUCTION CORP., FORMULA 1
TRANSPORT INC., FERRARA EQUIPMENT
INC., and SAL FERRARA,

                            Defendants.
---------------------------------------------------------------------x

Civil Action No.: 02-CV-0582
(SLT) (WDW)

## DECLARATION OF MICHAEL S. ADLER IN SUPPORT OF PLAINTIFFS' MOTIONS (1) FOR AN ORDER DIRECTING AUDAX CONSTRUCTION CORP.'S PRINCIPALS TO SATISFY THE PARTIAL JUDGMENT AND (2) FOR LEAVE TO AMEND THE COMPLAINT

      I, Michael S. Adler, under penalty of perjury and in lieu of an affidavit as permitted by 28 U.S.C. §1746, declare as follows:

      1.    I am an associate with the law firm of Cohen, Weiss and Simon LLP, counsel to the Trustees of the Local 282 Welfare, Pension, Annuity, and Job Training (the "Funds"), plaintiffs in the above-captioned action, and I am a member of the bar of this Court. I am fully familiar with the facts and proceedings herein.

      2.    I submit this declaration in Support of Plaintiffs' Motions (1) for an Order directing Audax Construction Corp.'s ("Audax") principals, Nicholas Nubile ("Nubile"), Nunzio Montoni ("Montoni"), and Victor DiRe (DiRe," collectively with Nubile and Montoni, "the Principals"), to satisfy the Partial Judgment entered by the Court on May 29, 2009 (Docket No.

116) (the "Partial Judgment") and (2) for leave to amend the Complaint. A copy of the Partial Judgment is attached hereto as Exhibit "A."

Procedural History

3. In January 2002, Plaintiffs commenced this action, in part, to collect contributions due and owing from Formula 1 Transport Inc., Ferrara Equipment Inc., and Sal Ferrara (collectively, the "Original Defendants"), pursuant to Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") to enforce collectively bargained obligations against Formula 1 Transport Inc., its alter-ego/single employer entity, Ferrara Equipment Inc., and both companies' controlling official, Sal Ferrara. *See* Complaint. (Docket No. 1.)

4. In April 2004, the Plaintiffs amended their complaint (the "Amended Complaint"),[1] adding Audax as a defendant, and alleging, in part, that Audax and the Original Defendants integrated their operations in an ongoing scheme to defraud the Funds by underpaying their joint and/or individual contractual obligations to contribute to the Funds. Between March 8, 2005 and June 13, 2005, each of the then parties to this action moved the Court for summary judgment to be entered in their favor. A copy of the Amended Complaint is attached hereto as Exhibit "B."

5. Montoni and Nubile were each deposed in January 2005 concerning matters relevant to this litigation.

6. Between March 2005 and June 2005, each of the then parties to this action moved the Court for summary judgment to be entered in their favor. (Docket Nos. 43, 44, 64, 83, & 92.)

---

[1] *See* Docket Nos. 20 (original version) and 98 (electronically filed version).

2

7. Audax, through the Principals, answered the amended complaint in May 2004, before amending its answer in June 2004. (Docket Nos. 28-29.)

8. In September 2005, the Plaintiffs and the Original Defendants settled their disputes. (Docket No. 97.)

9. By September 2007 Memorandum and Order (Docket No. 99) (the "Order"), the Court granted the Former Trustees' motion for summary judgment as to the issue of liability. Audax was also ordered to submit to audit.[2] A copy of the Order is attached hereto as Exhibit "C."

10. In 2008 the Funds' auditors audited Audax for the period from April 1, 2002 through June 30, 2006. The audit report reflected a debt of approximately $575,000: approximately $320,000 in delinquent contributions, $250,000 in interest, and $3,500 in audit fees owed. (June 18, 2008 Declaration of Ken Jones in Support of Plaintiffs' Request for Damages, ¶ 6, at 3-4 (Docket No. 110-8).)

11. On June 2008, Plaintiffs requested the Court enter judgment against Audax and award the Funds approximately $1.6 million in damages. (Docket No. 110.)

12. The Principals failed to cause Audax to contest Plaintiffs' June 2008 damages request.

13. In February 2009, the Honorable William D. Wall, U.S.M.J., recommended that the Funds be awarded judgment against Audax in the amount of approximately $1.2 million dollars, plus additional interest. (Docket No. 113.)

14. The Principals failed to cause Audax to oppose Judge Wall's February 2009 Report and Recommendation.

---

[2] The Court also denied Plaintiffs' motion to amend the complaint.

3

15. The Court entered the Partial Judgment on in May 2009 awarding the Funds approximately $1.2 million, plus additional interest and liquidated damages, while ordering Audax to submit the books and records of six affiliated entities to audit so that additional damages could be calculated.

16. In March 2010, post judgment discovery demands and subpoenas relevant to this action were served on Nubile and Montoni. Through post judgment discovery, the Trustees hoped to learn the location of Audax's assets as well as the documentation necessary for the conduct of the audits of the affiliates' books and records. Attached hereto as Exhibit "D" are the relevant Post Judgment Discovery Demands, Subpoenas, and Affidavits of Service.

17. The documentation received in response was limited, only including the corporate tax returns of Audax and five of the affiliated companies.

18. Despite no fewer than eights attempts at service of writs of execution on Audax care of Nubile and Montoni (both of whom appeared to be evading service), the United States Marshal was unable to serve a writ of execution on Audax. (Docket Nos. 126-128.)

19. The addresses utilized for attempted service on Nubile and Montoni included those where service of subpoenas was accepted two months prior to the attempted service of the writ. *See* Ex. D (affidavits of service).

20. Service of a writ of execution was not attempted on DiRe, as plaintiffs have been unable to conclusively locate him, though it is believed he now resides in Highland Beach, Florida.

21. The Partial Judgment remains unsatisfied and the affiliated entities' books and records have not been submitted to audit.

Audax and the Affiliated Companies' Background Information

22.  As evident from Audax's tax returns, at all times relevant to this action, each of the Principals controlled at least one-third of Audax's shares. Attached hereto as Exhibit "E" is a copy of Audax's 2002 Corporate Tax Return.[3] Attached hereto as Exhibit "F" is a copy of Audax's 2003 Corporate Tax Return. Attached hereto as Exhibit "G" is a copy of Audax's 2004 Corporate Tax Return. Attached hereto as Exhibit "H" is a copy of Audax's 2005 Corporate Tax Return. Attached hereto as Exhibit "I" is a copy of Audax's 2006 Corporate Tax Return.

23.  At May 21, 2010 deposition, Nubile confirmed the Principals' ownership of Audax. *See* the May 21, 2010 Deposition Transcript of Nicholas Nubile ("Nubile Tr."), attached hereto as Exhibit "J," at 12:2-11.

24.  Nubile supervised Audax's office, including, at times, reviewing its payroll, and Montoni and DiRe supervised Audax's field work. *See* Ex. J (Nubile Tr.), at 12:25-14:3.

25.  Each of the Principals had authority to sign Audax's checks. *See* Ex. J (Nubile Tr.), at 14:4-14.

26.  The Principals each also controlled at least one-third the shares of four of the six affiliated entities, with Nubile owning 49% of a fifth of the entities. *See* Ex J (Nubile Tr.), at 20:13-21:5 and 25:5-27:23.

---

[3] Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), P.L. 104-91, which became effective April 14, 2003, health plans (which include the Local 282 Welfare Trust Fund) and their "business associates" (which include plaintiffs' counsel) are prohibited from disclosing "protected health information" regarding a health fund participant. Given this legislation, all social security or tax payer identification numbers which may constitute "protected health information" and is not necessary for determination of this motion has been redacted. *See also* Fed.R.Civ.P. 5.2.

27. In late 2009, the Principals' destroyed every record Audax had, including, but not limited to, bank account statements, and destroyed records necessary for the conduct of the audits of the affiliated entities' books and records. *See* Ex. J (Nubile Tr., at 19:19-24).

28. Since entry of the Partial Judgment, DiRe moved to Florida, and Nubile purchased 49% of Namow Inc. for $300,000 (though it is not documented in writing). Nubile also is a shareholder in a restaurant. (Ex. J (Nubile Tr.), at 12:12:19-20, 20:6-21:5, 23:16-24:2, and 32:2-23.)

Audax's Financial Information

29. As is evident from its tax returns, Audax was a solvent entity prior to the filing of the Amended Complaint. Specifically, Audax's 2002 tax return reports almost $5.5 million in total assets and more than $1.2 million in retained earnings, and Audax distributed $39,000 to the Principals. Similarly, at the end of the 2003 tax year, Audax, reported more than $4.7 million in total assets and more than $940,000 in retained earnings, and it distributed $420,000 amongst the Principals. *See* Ex. E (2002 Corporate Tax Return) & Ex. F (2003 Corporate Tax Return).

30. At the end of the 2004 tax year. Audax reported more than $2.5 million in total assets and more than $2.1 million in retained earnings, while it distributed approximately $185,000 to the Principals, who each received nearly $62,000. *See* Ex. G (2004 Corporate Tax Return).

31. At the end of the 2005 tax year, Audax reported only $100,257 in total assets and $370,257 in retained earnings while distributing more than $2.9 million amongst the Principals, with each Principal receiving approximately $976,000 in distributions. *See* Ex. H (2005 Corporate Tax Return).

32. At the end of the 2006 tax year, Audax reported zero in total assets and $270,000 in retained earnings, while it caused nearly $250,000, to be distributed amongst the Principals, with each Principal receiving more than $80,000 in distributions. *See* Ex. I (2006 Corporate Tax Return).

33. Audax reported zero liabilities in 2004, 2005, and 2006. *See* Ex. G (2004 Corporate Tax Return), Ex. H (2005 Corporate Tax Return), & Ex. I (2006 Corporate Tax Return).

34. Audax wound up its affairs in 2004 and 2005. *See* Ex. J (Nubile Tr.), at 19:19-24.

35. There is no evidence indicating that potential payment to the Funds was considered prior to distribution, nor was Audax's winding up its affairs and distribution of all assets communicated to the Court or the Trustees.

36. Audax, through the Principals, declared its 2006 tax return to be its final return. *See* Ex. I (2006 Corporate Tax Return).

37. The Principals' distribution of Audax's assets left Audax unable to pay the fee to the Secretary of State to formally dissolve in compliance with the New York Business Corporation Law. *See* the July 16, 2010 Tr. of the Dep. of Kenneth Eisenberg, attached hereto as Exhibit "K", at 94:14-95:6.

38. By their actions, the Principals caused Audax to effectively cease operating during the 2006 tax year and unable to satisfy any judgments or debts incurred by Audax.

Proposed Second Amended Complaint

39. By their motion, the Trustees, in part, seek to amend their complaint to add the Principals as defendants with Audax, jointly and severally liable for any unsatisfied portion of the Partial Judgment and for any amounts deemed due by the as yet uncompleted affiliate audits, and to substitute two current trustees in place of the current named plaintiffs, who are no longer trustees.

40. Audax has consented to the Trustee substitution. *See* the August 13, 2010 email from counsel for Audax confirming such, attached hereto as Exhibit "L."

41. A copy of the proposed Second Amended Complaint is attached hereto as Exhibit "M."

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: February 15, 2011
      New York, New York

                                              /s/ Michael S. Adler
                                              Michael S. Adler