UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

GARY LA BARBERA and THEODORE KING, as
Trustees and Fiduciaries of the Local 282 Welfare
Trust Fund, the Local 282 Pension Trust Fund, the
Local 282 Annuity Trust Fund, the Local 282
Vacation and Sick Leave Trust Fund, and the Local
282 Job Training Trust Fund,

          Plaintiffs,

   - against -

AUDAX CONSTRUCTION CORP., FORMULA 1
TRANSPORT INC., FERRARA EQUIPMENT
INC., and SAL FERRARA,

          Defendants.

------------------------------------------------------------------x

Civil Action No. 02-CV-0582
(SLT) (WDW)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTIONS (1) FOR AN ORDER DIRECTING
## AUDAX CONSTRUCTION CORP.'S PRINCIPALS
## TO SATISFY THE PARTIAL JUDGMENT AND
## (2) FOR LEAVE TO AMEND THE COMPLAINT

Joseph J. Vitale
David R. Hock
Michael S. Adler
COHEN, WEISS AND SIMON LLP
330 West 42nd Street, 25th Floor
New York, New York 10036
Telephone:  (212) 563-4100
Facsimile:  (212) 695-5436

*Counsel for Plaintiffs*

Dated: February 15, 2011

00176783.DOC.5

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND..............................................................................2

    1.   Procedural History ......................................................................2

    2.   Audax ...........................................................................................2

    3.   The Amended Complaint .............................................................3

    4.   The Principals' Actions During the Pendency of Litigation .........................3

ARGUMENT..........................................................................................................7

I.    THE COURT SHOULD SET ASIDE THE PRINCIPALS'
    FRAUDULENT CONVEYANCE OF AUDAX'S ASSETS
    PURSUANT TO NEW YORK DEBTOR AND CREDITOR LAW ..................................7

    1.   The Principals' Conveyances Were Fraudulent as to the Funds ...................7

    2.   The Principals Should Be Directed to Personally
       Satisfy the Partial Judgment .....................................................10

II.   THE TRUSTEES SHOULD BE PERMITTED TO AMEND THE COMPLAINT........11

    1.   Leave to Amend a Complaint Is Freely Given ...............................12

    2.   The Court Has Supplemental Jurisdiction Over
       the State Law Claims.................................................................13

    3.   The Principals' Actions Give Rise to Multiple State
       Law Causes of Action...............................................................14

      (i)   BCL Section 510 ....................................................................14

      (ii)   BCL Section 719 ...................................................................15

      (iii)   BCL Section 720 ..................................................................16

      (iv)   DCL Sections 273 and 273-a.................................................18

      (v)   DCL Section 276 ....................................................................18

      (vi)   Piercing the Corporate Veil ...................................................19

i

4.   The Funds Seek to Substitute Current Trustees
     for the Former Trustees ........................................................................21

CONCLUSION ......................................................................................................22

## <u>TABLE OF AUTHORIES</u>

### FEDERAL CASES

<u>Page</u>

*Andujar v. Rogowski,*
    113 F.R.D. 151 (S.D.N.Y. 1986) ..................................................................................12

*Atlanta Shipping Corp., Inc. v. Chemical Bank,*
    818 F.2d 240 (2d Cir. 1987) ...............................................................................8, 11

*BFP v. Resolution Trust Corp.,*
    511 U.S. 531 (1994) .................................................................................................18

*Block v. First Blood Assocs.,*
    988 F.2d 344 (2d Cir. 1993) .................................................................................12

*Capital Distribution Services, Ltd. v. Ducor Express Airlines, Inc.,*
    04 Civ. 5303 (NG)(VVP), 2007 WL 1288046 (E.D.N.Y. May 1, 2007) ...................17, 20

*Del Turco v. Speedwell Design,*
    02 Civ. 5369 (KAM), 2009 WL 910355 (E.D.N.Y. Mar. 31, 2009)................................21

*Foman v. Davis,*
    371 U.S. 178 (1962) .................................................................................................12

*Gasser v. Infanti Int'l, Inc.,*
    353 F. Supp. 2d 342 (E.D.N.Y. 2005) ...........................................................8, 10, 11

*HBE Leasing Corp. v. Frank,*
    48 F.3d 623 (2d Cir. 1995) .....................................................................................11

*JSC Foreign Economic Assoc. Technostroyexport v. Int'l Development and Trade*
    *Services, Inc.,* 295 F. Supp. 2d 366 (S.D.N.Y. 2003)........................................9, 16, 17, 20

*Jaspan v. Certified Industries, Inc.,*
    658 F. Supp. 332 (E.D.N.Y. 1986) .........................................................................17

*Lippe v. Bairnco Corp.,*
    249 F. Supp. 2d 357 (S.D.N.Y. 2003) ...............................................................18, 19

*In re Montclair Homes v. Larosa,*
    200 B.R. 84 (Bankr. E.D.N.Y. 1996) .......................................................................8

*Neshewat v. Salem,*
    365 F. Supp. 2d 508 (S.D.N.Y. 2005) ...............................................................10, 11

*Permatex v. Loctite Corp.*,
    03 Civ. 943, 2004 WL 1354253 (S.D.N.Y. June 17, 2004) ............................................ 13

*Petersen v. Vallenzano*,
    849 F. Supp. 228 (S.D.N.Y. 1994) ......................................................................... 9

*Rachman Bag Co. v. Liberty Mutual Ins.*,
    46 F.3d 230 (2d Cir. 1995) ................................................................................ 12

*Sullivan v. West New York Residential, Inc.*,
    01 Civ. 7847, 2003 WL 21056888 (E.D.N.Y. Mar. 5, 2003) ....................................... 12

*United States v. Carlin*,
    948 F. Supp. 271 (S.D.N.Y. 1996) ...................................................................... 18

*In re Vaniman Int'l v. Toboroff*,
    22 B.R. 166 (Bankr. E.D.N.Y. 1982) ................................................................... 19

*In re Wedtech Corp. v. Nofziger*,
    88 B.R. 619 (Bankr. S.D.N.Y. 1988) ................................................................... 17

## STATE CASES

*Amfesco Industries, Inc. v. Greenblatt*,
    172 A.D.2d 261 (1st Dep't 1995) ........................................................................ 17

*Brown v. Brown*,
    143 A.D.2d 248 (2d Dept. 1988) ......................................................................... 17

*Buttles v. Smith*,
    281 N.Y. 226, 22 N.E.2d 350 (1939) .................................................................... 16

*Chase Manhattan Bank v. Oppenheim*,
    109 Misc. 2d 649, 440 N.Y.S.2d 829 (N.Y. Sup. 1981) .............................................. 11

*Farm Stores, Inc. v. School Feeding Corp.*,
    102 A.D.2d 249, 477 N.Y.S.2d 374 (2d Dep't 1984), *modified on other grounds
    and affirmed*, 64 N.Y.2d 1065, 489 N.Y.S.2d 877 (1985) ........................................ 17

*Hastings v. H.M. Byllesby & Co.*,
    293 N.Y. 404, 57 N.E.2d 733 (1944) ................................................................... 17

*Menaker v. Alstaedter*,
    134 A.D.2d 412 (2d Dep't 1987) .......................................................................... 9

*Morris v. New York State Dep't of Taxation and Fin.*,
    82 N.Y.2d 135, 603 N.E.2d 1157(1993) ....................................................................... 20

*U.S. Bancorp Equipment Finance, Inc. v. Rubashkin*,
    30 Misc. 3d 1216(A), 2011 WL 293716 (N.Y. Sup. Jan. 31, 2011) ................................. 11

## FEDERAL STATUTES

28 U.S.C. § 1367(a) ............................................................................................................. 14

29 U.S.C. §§ 1132 ......................................................................................................... 13, 14

29 U.S.C. §§ 1145 ........................................................................................................... 2, 14

Fed. R. Civ. P. 15(a) ........................................................................................................... 12

Fed. R. Civ. P. 12 ............................................................................................................... 12

Fed. R. Civ. P. 69(a)(1) .............................................................................................. 1, 7, 10

## STATE STATUTES

BCL § 510 ..................................................................................................................... 14, 15

BCL § 719 ............................................................................................................................ 15

BCL § 720 ................................................................................................................. 7, 16, 17

DCL § 272 .............................................................................................................................. 8

DCL § 273 ............................................................................................................. 7, 8, 11, 18

DCL § 273-a .......................................................................................................... 7, 8, 11, 18

DCL § 276 ................................................................................................................... 12, 18

DCL § 278 ...................................................................................................................... passim

N.Y. C.P.L.R. § 5225 ................................................................................................. 1, 7, 10

N.Y. C.P.L.R. § 5227 ................................................................................................. 1, 7, 10

**MISCELLANEOUS**

7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1688 (2d ed. 1986)...........12

Plaintiffs, the Trustees and fiduciaries of the above-captioned Local 282 Trust Funds (the "Funds"), submit this memorandum of law in support of their motions for an order pursuant to Section 278 of the New York Debtor and Creditor Law (the "DCL") and for permission to amend the complaint.

## INTRODUCTION

Nicholas Nubile ("Nubile"), Nunzio Montoni ("Montoni"), and Victor DiRe ("DiRe") (collectively with Nubile and Montoni, "the Principals"), the officers and sole shareholders of defendant Audax Construction Corp. ("Audax"), knowingly and intentionally distributed all of Audax's assets, more than $3 million, to themselves during the pendency of this litigation, rendering Audax insolvent and incapable of satisfying the May 29, 2009 partial judgment for approximately $1.2 million (Docket No. 116) (the "Partial Judgment"). The Principals also destroyed all the records pertinent to the Trustees' remaining claims, specifically documents necessary for the Trustees to complete the Court-ordered audits of affiliated entities' books and record necessary to enter a final judgment in this action.

Through these motions, the Trustees seek to (1) enforce the Partial Judgment against the Principals by compelling the return of Audax's assets which are necessary to satisfy the Partial Judgment, as permitted by Section 278 of the DCL;[1] (2) amend their complaint to add the Principals as defendants to hold the Principals jointly and severally liable with Audax for any unsatisfied portion of the Partial Judgment and for any amounts found by the as yet uncompleted affiliate audits; and (3) substitute two current Trustees in place of the current named plaintiffs, who are no longer Trustees.

---

[1] This Court can enforce Section 278 of the DCL pursuant to N.Y. C.P.L.R. 5225 and 5227, as made applicable to this proceeding under Fed. R. Civ. P. 69(a)(1).

## FACTUAL BACKGROUND

### 1.   Procedural History

In January 2002, Plaintiffs commenced this action, in part, to collect contributions due and owing from Formula 1 Transport Inc., Ferrara Equipment Inc., and Sal Ferrara (collectively, the "Original Defendants"), pursuant to Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1145, to enforce collectively bargained obligations against Formula 1 Transport Inc., its alter-ego/single employer entity, Ferrara Equipment Inc., and both companies' controlling official, Sal Ferrara.[2]

In April 2004, the Plaintiffs amended their complaint (the "Amended Complaint"),[3] by adding Audax as a defendant, and by alleging, in part, that Audax and the Original Defendants integrated their operations in an ongoing scheme to defraud the Funds by underpaying their joint and/or individual contractual obligations to contribute to the Funds. Between March 2005 and June 2005, each of the then parties to this action moved the Court for summary judgment to be entered in their favor.[4]  In September 2005, the Plaintiffs and the Original Defendants settled their disputes.[5]

### 2.   Audax

Audax was, at all times relevant to this action, controlled by the Principals, who each held at least one-third of its shares.[6]  As is evident from its tax returns, Audax was a solvent

---

[2] *See* Complaint (Docket No. 1.)

[3] *See* Docket Nos. 20 (original version) and 98 (electronically filed version).  A copy of the Amended Complaint is attached to the February 15, 2011 Declaration of Michael S. Adler in Support of Motion to Amend Complaint ("Adler Decl.") as Exhibit B.

[4] *See* Docket Nos. 43, 44, 64, 83, and 92.

[5] See Docket No. 97.

[6] *See* Adler Decl. Ex. E (2002 Corporate Tax Return); Ex. F (2003 Corporate Tax Return); Ex. G (2004 Corporate Tax Return); Ex. H (2005 Corporate Tax Return); and Ex. I (2006

entity prior to the filing of the Amended Complaint.  Specifically, Audax's 2002 tax return reports almost $5.5 million in total assets and more than $1.2 million in retained earnings, and distributed $39,000 to the Principals.[7]  Similarly, at the end of the 2003 tax year, Audax reported more than $4.7 million in total assets and more than $940,000 in retained earnings, and it distributed $420,000 amongst the Principals.[8]

### 3.      The Amended Complaint

The Plaintiffs formally added Audax as a party to the litigation through the April 7, 2004 filing of the Amended Complaint.  Audax answered the Amended Complaint on May 28, 2004, and then amended its Answer on June 16, 2004.  (Docket Nos. 28-29).  Thus, the Principals clearly were cognizant and aware of the allegations raised in the Amended Complaint, which included, but were not limited to the allegations that:  Audax was a joint employer with Formula 1 and with Ferrara Equipment, thereby becoming liable for additional contributions and attendant damages claimed due the Funds; Audax deliberately underreported contributions to the Funds on its remittance reports contributions due for the period commencing July 1, 2002, if not earlier; and that Audax failed to remit contributions in accordance with the terms of its collective bargaining agreement (the "CBA") on behalf of employees of its subcontractors who performed covered work, as defined by the CBA.

### 4.      The Principals' Actions During the Pendency of Litigation

Once Audax was named a defendant in this action in April 2004, the Principals systematically, deliberately, and intentionally distributed Audax's remaining assets, totaling well

---

Corporate Tax Return).  The Principals each also controlled one-third the shares of four affiliated entities, with Nubile owning 49% of a fifth entity.  (Adler Decl. Ex J (Nubile Tr.), at 20:13-21:5, 25:5-27:23.)

[7] *See* Adler Decl Ex. E (2002 Corporate Tax Return).

[8] *See* Adler Decl. Ex. F (2003 Corporate Tax Return).

over $3 million amongst themselves, rendering Audax not only incapable of satisfying the Partial

Judgment, but even unable to pay the fee to the Secretary of State to formally dissolve in

compliance with Article 10 of the New York Business Corporation Law ("BCL").[9]

Specifically, at the end of the 2004 tax year Audax reported more than $2.5

million in total assets and more than $2.1 million in retained earnings, while it distributed

approximately $185,000 to the Principals (other than dividend distributions), who each received

nearly $62,000.[10]  However, at the end of the following year, Audax reported little more than

only $100,000 in total assets and $370,000 in retained earnings while distributing more than $2.9

million amongst the Principals (other than dividend distributions), with each Principal receiving

approximately $976,000 in distributions.[11]  By the end of the 2006 tax year, Audax reported zero

in total assets and $270,000 in retained earnings, while it caused nearly $250,000 (other than

dividend distributions), to be distributed amongst the Principals, with each Principal receiving

more than $80,000 in distributions.[12]  Audax's counsel confirmed that in 2004 and 2005, the

Company was closing out its operations.[13]  Audax's 2006 tax return was marked its final

return.[14]

_____

[9] See Adler Decl. Ex. K (July 16, 2010 Tr. of the Dep. of Kenneth Eisenberg ("Eisenberg Tr."), at 94:14-95:6.)

[10] See Adler Decl Ex. G (2004 Corporate Tax Return).

[11] See Adler Decl Ex. H (2005 Corporate Tax Return).

[12] See Adler Decl Ex. I (2006 Corporate Tax Return).

[13] See Adler Decl. Ex. J (May 21, 2010 Tr. of the Dep. of Nicholas Nubile ("Nubile Tr.")), at 19:19-24. There is no evidence indicating that potential payment to the Funds was considered prior to distribution, nor was Audax's winding up its affairs and distribution of all assets communicated to the Court or the Trustees. (Adler Decl ¶ 36.)  All the more evident of the Principals' intent not to satisfy the Funds' monetary claims in this action, Audax reported zero liabilities in 2004, 2005, and 2006. See Adler Decl Ex. G (2004 Corporate Tax Return), Ex. H (2005 Corporate Tax Return), & Ex. I (2006 Corporate Tax Return).  Since distribution of Audax's assets and entry of the Partial Judgment, DiRe moved to Florida, and Nubile purchased 49% of Namow Inc. for $300,000 (though the purchase is not documented in writing). Nubile

However, as is evident from their active participation in this litigation while deliberately looting Audax of its assets, the Principals were well aware of Audax's potential liability to the Funds.  Specifically, Montoni and Nubile were each deposed in January 2005 concerning matters relevant to this litigation.[15]  In March 2005, the Principals caused Audax to file a Counter-Statement to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts.[16]  Montoni and Nubile each submitted affidavits opposing the Plaintiffs' June 2005 motion for summary judgment.[17]  Audax also opposed Plaintiffs' June 2005 motion to amend the complaint to name the Principals as defendants, in part, claiming that the time necessary for additional discovery based on Plaintiffs' new claims would prejudice Audax.[18]  At the same time the Principals were causing Audax to oppose these motions, the Principals were stripping Audax of its assets rendering it "judgment proof."

By their actions, the Principals caused Audax to effectively cease operating and to be unable to satisfy any judgments or debts incurred by Audax.  As noted, despite pendency of several motions, one of which was filed by Audax, the Principals did not notify the Court that Audax was winding up its affairs and distributing its remaining assets.  Had Audax not distributed these assets to its Principals, Audax would have been able to satisfy the Partial Judgment.

---

also is a shareholder in a restaurant. (Adler Decl. Ex. J (Nubile Tr.), at 12:12:19-20, 20:6-21:5, 23:16-24:2, and 32:2-23.)

[14] *See* Adler Decl. Ex. I (2006 Corporate Tax Return).

[15] *See* Adler Decl. ¶ 5.

[16] *See* Docket Nos. 51 & 57.

[17] *See* Docket Nos. 92, 93.1 & 93.2.

[18] See Docket Nos. 85 & 86.

Thereafter, the Court granted Plaintiffs' motion for summary judgment as to the issue of liability.[19]  Audax was also ordered to submit to audit.[20]  Thereafter, the Funds' auditors audited Audax for the period from April 1, 2002 through June 30, 2006.  The audit report reflected a debt of approximately $575,000: approximately $320,000 in delinquent contributions, $252,000 in interest, and $3,500 in audit fees owed.[21]

Once Audax failed to remit the audited deficiency, by June 2008 motion, Plaintiffs moved the Court for entry of judgment against Audax.[22]  The Court entered the Partial Judgment on in May 2009 awarding the Funds approximately $1.2 million dollars, plus additional interest and liquidated damages, while ordering Audax to submit the books and records of six affiliated entities to audit so that additional damages could be calculated.

Nevertheless, in late 2009, the Principals destroyed every record Audax had, including, but not limited to, bank account statements, and thus destroyed records necessary to conduct of the Court-ordered audits of the affiliated entities' books and records.[23]

Thereafter, the Trustees issued post judgment discovery demands and subpoenas on Nubile and Montoni, in the hope of learning the location of Audax's assets as well as the

---

[19]  See the September 5, 2007 Memorandum and Order (Docket No. 99) (the "Order").  In the Order, the Court also denied Plaintiffs' motion to amend the complaint.

[20]  See Order, at 25.

[21]  See the June 18, 2008 Declaration of Ken Jones in Support of Plaintiffs' Request for Damages, ¶ 6, at 3-4. (Docket No. 110-8.)

[22]  See Docket No. 110.

[23]  See Adler Decl. Ex. J (Nubile Tr., at 19:19-24) (Nubile admitting to the destruction).  The Principals' destruction of the affiliates' books and records may force the Trustees to estimate the relevant contributions due per the estimating provisions of the Funds' Restated Agreement and Declaration of Trust's (the "Trust Agreement").  See the June 18, 2008 Declaration of Theresa Cody, Ex. A (Trust Agreement), at 27-29.  (Docket No. 110-3.)

documentation necessary for the conduct of the audits of the affiliates' books and records.[24]  The

documentation received in response was limited, only including the corporate tax returns of

Audax and the affiliated companies.[25]  Additionally, despite no fewer than eights attempts at

service of writs of execution on Audax care of Nubile and Montoni (both of whom appeared to

be evading service), the United States Marshal was unable to serve a writ of execution on

Audax.[26]

The Partial Judgment remains unsatisfied and the affiliated entities' books and

records have not been submitted to audit.[27]

## ARGUMENT

I.  **THE COURT SHOULD SET ASIDE THE PRINCIPALS'
    FRAUDULENT CONVEYANCE OF AUDAX'S ASSETS
    PURSUANT TO NEW YORK DEBTOR AND CREDITOR LAW [28]**

1.  **The Principals' Conveyances Were Fraudulent as to the Funds**

In systematically pilfering more than $3 million over a three year period,

rendering Audax insolvent and incapable of paying its Court ordered debt, the Principals

---

[24] *See* Adler Decl. Ex. D (Post Judgment Discovery Demands, Subpoenas, and Affidavits of Service).

[25] *See* Adler Decl. ¶ 17.

[26] *See* Docket Nos. 126-128.  Service of a writ of execution was not attempted on DiRe, as plaintiffs have been unable to conclusively locate him, though it is believed he now resides in Highland Beach, Florida.  (Adler Decl. ¶ 20.)  The addresses utilized for attempted service on Nubile and Montoni included those where service of subpoenas was accepted by Nubile and Montoni two months prior to the attempted service of the writ.  (Adler Decl. ¶ 19 & Ex. D (affidavits of service.)  It was then that the Principals were alerted to the Trustees' collection attempts.

[27] See Adler Decl ¶ 21.

[28] Fed.R.Civ.P. 69(a) provides that judgment enforcement proceedings are conducted in "accord with the procedure of the state where the court is located."  N.Y. C.P.L.R. Sections 5225 and 5227 permit the Court to enter orders directing third-parties to turn over property belonging to the judgment debtor.  DCL Section 278 provides a mechanism for the return of assets fraudulently distributed rendering a debtor insolvent, as defined by and detailed in DCL Sections 273 and 273-a.

7

committed fraud as to the Funds.  Specifically, DCL Section 273 provides:

> Every conveyance made and every obligation incurred by a person
> who is or will be thereby rendered insolvent is fraudulent as to
> creditors without regard to actual intent if the conveyance is made
> or the obligation is incurred without fair consideration.

Section 273 "is founded upon a theory that a transfer by an insolvent is fraudulent

irrespective of any actual intent."[29]  Property transfers are considered fraudulent as to creditors

and voidable as a matter of law, if made: "(1) without fair consideration, and (2) the party

making the transfer is insolvent or is rendered insolvent thereby."[30]

Although fair consideration can sometimes be found when the property was

transferred to satisfy a prior debt,[31] such transfer does not constitute fair consideration if, as was

the case here, the transferee is an officer, director or major shareholder of the transferor.[32]

The conveyances also give rise to a fraud as to the Funds under DCL Section 273-

a, which states:

> Every conveyance made without fair consideration when the
> person making it is a defendant in an action for money damages or
> a judgment in such an action has been docketed against him, is
> fraudulent as to the plaintiff in that action without regard to the
> actual intent of the defendant if, after final judgment for the
> plaintiff, the defendant fails to satisfy the judgment.

---

[29] *In re Montclair Homes v. Larosa*, 200 B.R. 84, 95 (Bankr. E.D.N.Y. 1996) (citations omitted).

[30] *Id.*

[31] *See* DCL § 272 ("[w]hen such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or the obligation obtained.")

[32] *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 248-49 (2d Cir. 1987).  *See also Gasser v. Infanti Int'l, Inc.*, 353 F.Supp.2d 342, 354 (E.D.N.Y. 2005) ("[A] transfer made by an insolvent debtor to an affiliate or insider in satisfaction of an antecedent debt lacks good faith and is considered fraudulent.")

For a valid Section 273-a claim, the plaintiff must establish: "(1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for monetary damages, or that judgment has been docketed against the conveyor; and (3) that the defendant failed to satisfy the judgment."[33]  Proof of actual intent to defraud is not required.[34]

Here, the facts are clear.  As is evident from Audax's tax returns, particularly its 2006 final return, the Principals, without providing consideration of any kind, let alone fair consideration, effectively shut down Audax leaving it not only insolvent and incapable of paying its debts, but also incapable of defending itself in this action.  The Principals' intent to defraud the Funds and shield Audax's assets for themselves is increasingly evidenced by their recent actions with Nubile's and Montoni's refusal to accept service of writs of execution as officers of Audax (attempted no fewer than eight times) and Nubile's stubborn and ridiculous claim that all Audax's debts have been paid.  Therefore, the conveyances are fraudulent as to the Funds.

---

[33] *JSC Foreign Economic Assoc.*, 295 F.Supp.2d at 379, citing *Petersen v. Vallenzano*, 849 F.Supp. 228, 230 (S.D.N.Y. 1994).

[34] *Menaker v. Alstaedter*, 134 A.D.2d 412, 413, 521S.2d 35, 36 (2d Dep't 1987).

2.      **The Principals Should Be Directed to Personally Satisfy the Partial Judgment**

The Principals' fraudulent conveyances of Audax's assets to themselves rendering

Audax "judgment proof" gives rise to a claim by the Trustees under DCL Section 278(1),[35]

which provides:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> (b) Disregard the conveyance and attach or levy execution upon the property conveyed.

The remedial purpose of the statute "is to grant the creditor the right 'to be paid

out of the assets to which he is actually entitled and to set aside the indicia of ownership which

apparently contradict that right.'"[36]   Accordingly, "[u]nder New York law, a creditor may

recover money damages against parties who participate in the fraudulent transfer and are either

transferees of the assets or beneficiaries of the conveyance."[37]   Should the transferee have since

---

[35] The Court has jurisdiction over the Trustees' DCL § 278 claim pursuant to N.Y. C.P.L.R. §§ 5225 (payment of property in and not in the possession of the judgment debtor) and 5227 (payment of debts owed to the judgment debtor), as made applicable to this proceeding by Fed. R. Civ. P. 69(a)(1) (stating: "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies").

[36] *Neshewat v. Salem*, 365 F.Supp.2d 508, 521 (S.D.N.Y. 2005) (quoting *Gasser*, 353 F.Supp.2d at 356).

[37] *Neshewat*, 365 F.Supp.2d at 522 (internal citations omitted).

transferred the assets, a money judgment can be entered against him "in an amount up to the value of the fraudulently transferred assets."[38]

As noted, because the transfers were made by Audax (through the Principals) to the Principals without consideration of any kind, rendering Audax insolvent, the transfers are deemed fraudulent under DCL Sections 273 and 273-a.[39]

Therefore, the conveyances from Audax to the Principals should be set aside or disregarded pursuant to DCL Section 278 and the Trustees should be permitted to attach and levy on the property conveyed in the hands of the Principals, to the extent necessary to satisfy the Partial Judgment.[40]

As each of the Principals received an amount in excess of the Partial Judgment, this Court should direct the U.S. Marshal to levy upon the assets of the Principals to satisfy the Partial Judgment.

## II.   THE TRUSTEES SHOULD BE PERMITTED TO AMEND THE COMPLAINT

In addition to seeking to enforce the Partial Judgment, the Trustees seek to amend their pleadings (1) to name the Principals as Defendants and obtain a judgment for any

---

[38] *Id.* at 521-22.

[39] *See Atlanta Shipping Corp.*, 818 F.2d at 248-49; *Gasser*, 353 F.Supp.2d at 354. *See also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) (holding that transfers made by party after it became a defendant in an action and the party then failed to satisfy the judgment are fraudulent unless made for fair consideration).

[40] *See Neshewat*, 365 F.Supp.2d at 522 (setting aside husband to wife conveyance); *Gasser*, 353 F.Supp.2d at 355-56 (setting aside father to daughter conveyance); *Chase Manhattan Bank v. Oppenheim*, 109 Misc. 2d 649, 440 N.Y.S.2d 829 (N.Y. Sup. 1981) (setting aside mother to daughter property conveyance which took place after mother agreed to be personally liable for corporate debt); *U.S. Bancorp Equipment Finance, Inc. v. Rubashkin*, 30 Misc. 3d 1216(A), 2011 WL 293716 (N.Y. Sup. Jan. 31, 2011) (setting aside conveyances (1) in corporate stock interest to children and grandchildren, (2) husband to wife property transfer of interest in house for $7,500, and (3) mortgage of residential property where insufficient consideration was given).

unsatisfied portion of the Partial Judgment plus require the Principals to satisfy any additional

damages awarded; and (2) to substitute current trustees for the named plaintiffs, who are no

longer trustees.

### 1.   Leave to Amend a Complaint Is Freely Given

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading

"shall be freely given when justice so requires."[41]  The Supreme Court, and subsequent case law,

emphasizes a court's broad discretion to grant leave to amend under Rule 15; and denial is

warranted only where there is undue delay, bad faith, futility, or prejudice to the opposing

party.[42]  Furthermore, refusal to grant leave to amend without justification is "inconsistent with

the spirit of the Federal Rules."[43]

Additionally, Federal Rule of Civil Procedure 21 permits the Court to add parties

on motion of any party "on such terms as are just."  Further, "[r]ule 21 allows the Court broad

discretion to permit the addition of a party at any stage in the litigation."[44]

The Trustees note that the Court previously denied the prior motion to amend the

complaint because of concern that the proposed amendments might prejudice Audax, given the

lateness in filing as related to the Court proceedings.[45]   Given entry of the Partial Judgment,

---

[41] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Rachman Bag Co. v. Liberty Mutual Ins.*, 46 F.3d 230, 234-35 (2d Cir. 1995) (noting "preference that amendments be permitted"); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith.").

[42] *Foman,* 371 U.S. at 182.

[43] *Rachman Bag Co.,* 46 F.3d at 234 (quoting *Foman*, 371 U.S. at 182).

[44] *Sullivan v. West New York Residential, Inc.*, 01 Civ. 7847, 2003 WL 21056888, at *1 (E.D.N.Y. Mar. 5, 2003), citing *Andujar v. Rogowski*, 113 F.R.D. 151, 154 (S.D.N.Y. 1986) (citing 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1688 (2d ed. 1986)).

[45] *See* Memorandum and Order, Docket No. 99, at 24-25.

such potential prejudice no longer exists.  As is evident, the Principals' intentional stripping Audax's assets and their destruction of its and the affiliates' books and records *after* the Former Trustees filed their motion for summary judgment and initial motion to amend, demonstrate that the Principals rendered Audax incapable of legitimately participating in subsequent proceedings before this Court.  Moreover, the Principals' actions, which largely took place after the initial motion was filed, lend credence to the Trustees' claims, detailed below, of a deliberate intent to shield Audax from judgment by preserving its assets for themselves.

By this motion, the Trustees seek to amend the complaint to free Audax of its sole burden of satisfying the Partial Judgment and complying with the Court ordered audits of the affiliated entities, by adding the perpetrators of Audax's demise as parties.  If anything, adding the Principals as parties benefits Audax, giving it opportunity to recoup the assets that rendered it insolvent, while hopefully providing documented evidence or testimony capable of resolving the outstanding affiliate audits.  The alternative, bringing a separate lawsuit against the Principals, would cause unnecessary delay and waste of judicial resources.[46]

Finally, the Trustees note that additional discovery, if any, would be limited to the affiliate audit issue, given the documentation already received and the deposition testimony recorded with respect to Audax's insolvency.

### 2.    The Court Has Supplemental Jurisdiction Over the State Law Claims

The Court maintains jurisdiction in this action pursuant to the May 20, 2009 Memorandum & Order, at 4 (Docket No. 115) ("upon completion of the audit, the parties are directed to submit to the requirements of Magistrate Judge William D. Wall for a determination

---

[46] *See Permatex v. Loctite Corp.*, 03 Civ. 943, 2004 WL 1354253, at *4 (S.D.N.Y. June 17, 2004) (granting motion to amend, in part, because of concern that a separate lawsuit would "merely cause a pointless duplication of Court and party resources").

13

of damages and other sums to which the Trustees are entitled"), and pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, for the purposes of auditing the affiliates' books and records, and determining the sum total damages due.

Accordingly, the Trustees' proposed amended complaint, adding the Principals as parties based on various state law claims relating to the Principals' actions in stripping Audax of assets and destroying records necessary for the satisfaction of the Partial Judgment, is governed by 28 U.S.C. § 1367(a), which provides, in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Therefore, the Court possesses supplemental jurisdiction should it permit leave to amend the complaint.

### 3. The Principals' Actions Give Rise to Multiple State Law Causes of Action

#### (i)   BCL Section 510

By their intentional, systematic, and deliberate actions, the Principals violated BCL Section 510, which provides, in relevant part:

> (a) A corporation may declare and pay dividends or make other distributions in cash or its bonds or its property ... except when currently the corporation is insolvent or would thereby be made insolvent ...

> (b) Dividends may be declared or paid and other distributions may be made out of surplus only, so that the net assets of the corporation remaining after such declaration, payment, or distribution shall at least equal the amount of its stated capital ...

14

Accordingly, grounds exist to amend the complaint to allege the Principals violated BCL Section 510.

(ii) <b>BCL Section 719</b>

In violating Section 510, the Principals also violated Section 719, which provides, in relevant part:

> (a) Directors of a corporation who vote for or concur in any of the following corporate actions shall be jointly and severally liable to the corporation for the benefit of its creditors or shareholders, to the extent of any injury suffered by such persons, respectively, as a result of such action:
>
> (1) The declaration of any dividend or other distribution to the extent it is contrary to paragraphs (a) and (b) of section 510 (Dividends or other distributions in cash or property) …
>
> . . .
>
> (3) The distribution of assets to shareholders after dissolution of the corporation without paying or adequately providing for all known liabilities of the corporation.

Here, Audax's tax returns evince that during the pendency of litigation, despite over $350,000 in contributions already claimed due, allegations of underreporting already alleged, and despite having the documentation necessary to determine the balance due by Audax based on its own books and records squarely within their possession, the Principals caused to be distributed amongst themselves more than $3.1 million, rendering Audax not only insolvent and incapable of both complying with the affiliate audits and satisfying its debt to the Funds, but also unable to pay the fee to the Secretary of State to formally dissolve.[47]

Further, Nubile's recent claim that the Principals paid all of Audax's debts prior to informal liquidation[48] is preposterous, given the Principals' active participation in the

---

[47] *See* Adler Decl. Ex. H (2005 Corporate Tax Return), Ex. I (2006 Corporate Tax Return); and Ex. K (Eisenberg Tr.), at 94:14-95:6.

[48] *See* Adler Decl. Ex. J (Nubile Tr.), at 7:13:19; 63:19-20).

15

summary judgment proceedings, and knowledge not only of the $361,804.11 claim, but also that

contributions would be found due after an audit of Audax's books and records was completed

and their intimate knowledge of Audax's operations and underreporting to the Funds.

Specifically, Nubile supervised Audax's office, and as such had access to its books and records,

while Montoni and DiRe supervised its field work, and as such knew the type of work performed

by their employees.  Plus, each Principal had check signing authority, evincing knowledge of

where Audax's money went.[49]

Therefore, grounds exist to amend the complaint to allege that the Principals

violated DCL Section 719.

### (iii)    BCL Section 720

The Principals' actions also lend rise to a claim by the Trustees under BCL

Section 720, which provides "[u]nder New York law, a judgment creditor may assert a § 720

claim derivatively on behalf of the corporation, the judgment debtor."[50]

Specifically, BCL Section 720 provides, in relevant part:

> (a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:
>
> (1) … to compel the defendant to account for his official conduct in the following cases:
>
> (A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.

---

[49]  *See* Adler Decl. Ex. J (Nubile Tr.), at 12:25-14:14.

[50]  *JSC Foreign Economic Assoc. Technostroyexport v. Int'l Development and Trade Services, Inc.*, 295 F.Supp.2d 366, 383 (S.D.N.Y. 2003), citing BCL § 720 and *Buttles v. Smith*, 281 N.Y. 226, 22 N.E.2d 350, 353 (1939)).

(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.

(2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.

As is evident, "[b]y its terms section 720 imposes liability on directors and officers of a corporation for every diversion of corporate assets for improper or unnecessary purposes, whether as a result of intention or negligence."[51]  Further, this Court has specifically stated: "Shareholders who receive the assets of a corporation have a duty to provide for the payment of the obligations of the corporation and the failure to do so imposes an obligation to pay the corporate debts to the extent of the assets received."[52]

New York law permits "both direct and derivative suits under Section 720 because the wrong asserted by the judgment creditor is 'the illegal transfer of corporate assets which otherwise would have been available for satisfaction of a judgment obtained by the creditor.'"[53]  Further, "BCL 720 embraces common-law and statutory causes of action imposing liability on directors and covers every form of waste of assets and violation of duty whether as a

---

[51]  *In re Wedtech Corp. v. Nofziger*, 88 B.R. 619, 624 (Bankr. S.D.N.Y. 1988) (citations omitted).

[52]  *Jaspan v. Certified Industries, Inc.*, 658 F.Supp. 332 (E.D.N.Y. 1986), citing *Farm Stores, Inc. v. School Feeding Corp.*, 102 A.D.2d 249, 477 N.Y.S.2d 374, 377 (2d Dep't 1984), *modified on other grounds and affirmed*, 64 N.Y.2d 1065, 489 N.Y.S.2d 877 (1985)).

[53]  *JSC Foreign Economic Assoc.*, 295 F.Supp.2d at 383, quoting *Hastings v. H.M. Byllesby & Co.*, 293 N.Y. 404, 57 N.E.2d 733, 736 (1944)).

result of intention, negligence, or predatory acquisition."[54]  Section 720 "[u]nquestionably" "imposes liability on an officer or director who misappropriates corporate funds."[55]

By virtue of the Principals' transfer of Audax's remaining assets during pendency of litigation, rendering Audax incapable of satisfying the Partial Judgment and amounts to be determined due per the affiliate audits, the Funds, as judgment creditors, have grounds to amend the complaint adding the Principals as parties for violation of BCL Section 720.

### (iv)   DCL Sections 273 and 273-a

As noted, the conveyances by the Principals to the Principals give rise to a textbook fraud claim per DCL Sections 273 and 273-a for not only the transfers' effect on collection of the Partial Judgment amount, but also as to collection of any deficiencies determined due by the Court per the affiliate audits.

### (v)   DCL Section 276

Unlike DCL Sections 273 and 273-a, DCL Section 276 addresses actual, and not constructive, fraud, stating:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

Actual intent to hinder or delay must be established.[56]  However, due to the difficulty in proving actual intent to defraud creditors, reliance on "objective facts" or "badges of fraud" is permitted.[57]  The "badges" include:

---

[54] *Capital Distribution Services, Ltd. v. Ducor Express Airlines, Inc.*, 04 Civ. 5303 (NG)(VVP), 2007 WL 1288046, at *2 (E.D.N.Y. May 1, 2007), quoting *Amfesco Industries, Inc. v. Greenblatt*, 172 A.D.2d 261, 265 (1st Dep't 1995).

[55] *Capital Distribution Services*, 2007 WL 1288046, at *2, citing *Brown v. Brown*, 143 A.D.2d 248 (2d Dept. 1988).

18

> 1) gross inadequacy of consideration; 2) a close relationship between the transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the transferor after the conveyance.[58]

The Principals' distribution of Audax's assets amongst themselves meets each badge of fraud. Specifically, (1) as is evident by its insolvency and cessation of business operations to the extent that it could not formally dissolve with the Secretary of State, Audax received no consideration in exchange for the pilfering of its assets by its three shareholders; (2) the transferees, as Audax's sole shareholders and controlling officers, were in effect, the transferor; (3) the conveyance rendered Audax insolvent; (4) as is evident by the insolvency and cessation of business, over $3 million in distributions clearly was not in Audax's ordinary course of business; (5) despite Audax being a defendant in this litigation and the Principals potential defendants, the transfers not only were made over a three plus year period, but were kept secret from plaintiffs and the Court, despite then active participation by the Principals in this litigation; and (6) the Principals retained control of Audax's assets after the distributions. Therefore, the Trustees have grounds to amend and include a Section 276 claim.[59]

### (vi) <u>Piercing the Corporate Veil</u>

The Trustees further seek to include common law claims to pierce the corporate veil for the Principals' failure to observe the corporate form in distributing Audax's assets and

---

[56] *Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 374 (S.DN.Y. 2003) (quoting *United States v. Carlin*, 948 F.Supp. 271, 277 (S.D.N.Y. 1996).

[57] *Lippe*, 249 F.Supp.2d at 374-75, citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994).

[58] *Lippe*, 249 F.Supp.2d at 375 (internal citations omitted).

[59] *See In re Vaniman Int'l v. Toboroff*, 22 B.R. 166, 182 (Bankr. E.D.N.Y. 1982) (internal citations omitted) (holding that "where the transferee is in a position to dominate or control the debtor's disposition of his property, the transferee's intent to hinder, delay, or defraud creditors may be imputed to the debtor.")

for intent to defraud the Funds of contributions and attendant damages.  To successfully pierce the corporate veil:

> [R]equires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury.[60]

However, while "complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination standing alone is not enough; some showing of wrongful or unjust act toward plaintiff is required."[61]

The Principals' actions clearly demonstrate a complete disregard for the corporate form and intent to retain assets for their personal benefit.  First, the Principals liquidated Audax without complying with Article 10 of the BCL.  Moreover, the Principals possessed Audax's books and records, but failed to cause Audax to dispute amounts awarded in the Partial Judgment, before destroying those records, and those of four of the six affiliated entities, thereby making it difficult, if not impossible, to fully trace Audax's assets or determine the full amount of contributions due.[62]  Finally, despite being duly demanded, the Principals produced no documented evidence responsive to the Trustees' post judgment document requests, other than tax returns obtained through Audax and Nubile's accountant, suggesting either failure to keep formal records or destructions of such records to mask the transfers.[63]

---

[60] *JSC Foreign Economic Assoc.*, 295 F.Supp.2d at 388, *quoting Morris v. New York State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141, 603 N.E.2d 1157, 1160-61 (1993).

[61] *Morris*, 82 N.Y.2d at 141-42, 603 N.E.2d at 1160-61 (internal citations omitted).

[62] *See* Adler Decl. Ex. J (Nubile Tr.), at 8:25-9:18; 43:3-44:6.

[63] *See* Adler Decl. Ex. D (Post Judgment Discovery Demands, Subpoenas, and Affidavits of Service).  *See Capital Distribution Services, Ltd. v. Ducor Express Airlines, Inc.*, 04 Civ. 5303

Therefore, the Trustees should be permitted to amend the complaint to include common law claims to pierce the corporate veil for failure to observe the corporate form and for intent to defraud the Funds of contributions and attendant damages.

### 4. The Funds Seek to Substitute Current Trustees for the Former Trustees

In addition to the substantive proposed amendments, the Funds seek to amend the complaint by substituting two current Trustees as named plaintiffs in place of the Former Trustees, who are no longer Trustees and therefore presently lack standing to prosecute this case, because Section 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(3) only authorizes suits by participants, beneficiaries, or fiduciaries.[64]   Audax has consented to this request.[65]

---

(NG)(VVP), 2007 WL 1288046, at *3 (E.D.N.Y. May 1, 2007) (granting motion for summary judgment to pierce the corporate veil where the company was a family business, corporate records and formalities were not kept, the individual defendant diverted its assets after litigation was commenced, and as such, the company was deemed to have "no separate mind or will of its own, but rather was completely dominated by [the individual defendant], who used it to achieve his own ends.").

[64] *See Del Turco v. Speedwell Design*, 02-cv-5369 (KAM), 2009 WL 910355, at *2 (E.D.N.Y. Mar. 31, 2009) (requiring substitution of current trustees for former trustees in ERISA collection action).

[65] *See* Adler Decl. Ex. L (August 13, 2010 email.)

## CONCLUSION

For the reasons set forth above, the Court should grant the Trustees' motions to set aside the unlawful conveyances, pursuant to DCL Section 278 and to amend the complaint as to the Trustees' remaining claims.

Dated: February 15, 2011

/s/ Michael S. Adler
Joseph J. Vitale
David R. Hock
Michael S. Adler
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, New York 10036
(212) 563-4100

Attorneys for Plaintiffs

22